IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDUARDO HERRERA § | | |
| AND ALL OTHERS § | | |
| SIMILARLY SITUATED, § | | |
| Plaintiffs, § | | |
| v. § | | CIVIL ACTION |
| § | | FILE NO. 4:11-cv-3851 |
| § | | |
| § | | |
| UTILIMAP CORPORATION, § | | |
| QUANTA SERVICES MANAGEMENT § | | |
| PARTNERSHIP, L.P. and § | | |
| QUANTA SERVICES, INC. § | | |
| Defendants § | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT UTILIMAP CORPORATION'S MOTION TO DISMISS AND
<u>COMPEL ARBITRATION</u>**

## I. INTRODUCTION

Defendant's motion to compel individual arbitration should be denied because:

(1)     Defendant Utilimap Corporation's 2008 arbitration agreement is illusory and unenforceable because it provides for unilateral amendment by Defendant;

(2)     Defendant Utilimap Corporation's 2008 Arbitration agreement is invalid because it contains fee-splitting language that would prohibit Plaintiff from pursuing his statutory rights under the Fair Labor Standards Act (FLSA).

(4)     Defendant Utilimap Corporation's 2008 arbitration agreement is invalid because they violate the Dodd-Frank Act of 2010.

Therefore, Plaintiff respectfully requests that the court deny Defendant Utilimap Corporation's (hereinafter "Defendant" or "Utilimap")[1] motion to compel individual

---

[1] Defendant Quanta Services Management has not requested or sought to compel arbitration.

arbitration. Plaintiff requests leave to proceed in this court, and to use the collective action procedures in the Fair Labor Standards Act (FLSA).

## II. ARGUMENTS AND AUTHORITIES

**A.    Defendant's 2008 arbitration agreement is illusory and unenforceable because it provides for unilateral amendment of its provisions by Defendant.**

The 2008 employee handbook which includes the arbitration agreement included the following provisions: "The employee handbook is a living document. As the company grows, the handbook will be reviewed periodically and adapted to the changing needs of the company and its employees. All changes must be authorized and approved by the Company President." "I understand that the polices and benefits described in [the employee handbook] are subject to change at the sole discretion of Utilimap Corporation's President at any time." (*Plaintiff's Exhibit*, Numbers 1 employee handbook page 1).  Plaintiff Herrera is alleged to have signed his acknowledgement of said handbook and agreed to the terms and conditions therein; including the right of Defendant Utilimap to modify and change the handbook at the sole discretion of the President of Utilimap. (*Plaintiff's Exhibit*, Numbers 2 employee handbook page 47-48).

However, an arbitration agreement that is subject to unilateral revision by one party at any time is unenforceable. *Morrison v. Amway Corporation*, 517 F.3d 248, 254-258 (5$_{th}$ Cir 2008). In *Morrison*, the plaintiff had a distributorship agreement with defendant Amway, which provided for arbitration of any disputes between the parties. *Id*. However, Amway reserved the right to unilaterally modify any part of the distributorship agreement at any time; and since there was no evidence that the arbitration agreement was excluded from the scope of this unilateral amendment power, the Fifth Circuit held

that the arbitration agreement was illusory and therefore unenforceable under Texas contract law.[2] *Id*. 254-258. See also *Torres v. S.G.E. Management, LLC*, 2010 WL 3937362, at 4-5 (5th Cir.)(arbitration clause which was part of an agreement that could be unilaterally amended by one party upon giving notice was illusory and unenforceable); *Harris v. Blockbuster, Inc.,* 622 F. Supp.2d 396-399 (N.D. Tex. 2009)(arbitration clause in internet video purchase agreement was illusory because defendant Blockbuster reserved the right to alter the terms of the agreement at any time, by giving notice to the consumer).

Indeed, Defendant Utilimap's own exhibit shows that arbitration agreement was included in the employee handbook and but one of many company policies controlled by the employee handbook, which contains the language allowing Utilimap to unilaterally modify its contract with the Plaintiff, including the arbitration clause contained on pages 49-50 of the employee handbook. (*Defendant's Exhibits*, Dkt. No. 3-1, p.3). Therefore the arbitration agreement of 2008 was subject to unilateral revision by Defendant Utilimap.

Since Utilimap reserved the right to unilaterally amend all portions of its employee handbook at any time, it could therefore amend its 2008 arbitration clause at any time. (*Plaintiff's Exhibits*, Numbers 1 and 2; employee handbook page 1, 47-48). This renders the arbitration agreement illusory and unenforceable under the reasoning of *Morrison*, and therefore Plaintiff cannot be bound by the terms of the 2008 arbitration agreement. For the same reason that Plaintiff cannot be bound by the arbitration clause, Plaintiff cannot be bound by an agreement to refrain from proceeding on a collective

---

[2] Morrison also held that federal policy favoring arbitration does not apply in determining the contractual validity of an arbitration agreement. *Id* at 254. Whether an arbitration agreement is valid is determined by state law contract principles. *Id.*

basis, because this agreement was also within the handbook provisions that could be unilaterally revoked at any time. (*Plaintiff's Exhibits*, Numbers 1 and 2; employee handbook page 1, 47-48). ; *Morrison* at 254-258.

To be clear, Plaintiff is not merely arguing that the arbitration clause is illusory because he was an at-will employee. In this case, even the employer's promise to participate in arbitration is illusory, because the employer could revoke the arbitration clause itself, in its entirety, under the written handbook provisions offered and signed. (*Plaintiff's Exhibits*, Numbers 1 and 2; employee handbook page 1, 47-48). Defendant could easily expand or reduce the scope of the disputes to be arbitrated, or any other aspect of the arbitration procedure, at any time, without any restrictions. *Id*. This is precisely the reason that arbitration was rejected in *Morrison*, *Torres*, and *Harris*.

### B. Defendant's 2008 Arbitration agreement is invalid because it contains fee-splitting language that would prohibit Plaintiff from pursuing his statutory rights under the FLSA

Arbitration agreements that include exorbitant fee structure and place the burden on the shoulders of employees are routinely invalidated. As first explained by the court in *Cole v. Burns Int'l Security Services*, 105 F.3d 1465, 1468 (D.C. Cir. 1987), "the only way that an arbitration agreement can be lawful is if the employer assumes responsibility for the payment of arbitrator's compensation." Shortly thereafter, the Northern District of Texas held similarly held in *Jones v. Fujitsu Network Communications, Inc.*, 81 F. Supp. 2d 688, 693 (N.D. Tex. 1999), that a fee splitting provision of an arbitration agreement was unenforceable because the costs would prohibit the plaintiff from pursuing his statutory rights. Most recently, the Supreme Court acknowledged in *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 90 (2000) that, "it may well be

that the existence of large arbitration costs could preclude a litigant such as [plaintiff] from effectively vindicating her federal statutory rights in an arbital forum." See also, *Shankle v. B-G Maintenance Management of Colorado, Inc.* 163 F.3d 1230, 1235 (10th Cir. 1999).

Defendant Utilimap's arbitration agreement requires that Plaintiff pay for arbital costs, "The costs and fees of the arbitrator shall be shared equally by the parties, with the employee's portion of such costs not to exceed one full day's wages for the employee (if an exempt employee) or eight times the employee's hourly rate (if non-exempt employee). While this may seem reasonable at first blush, the arbitration agreement goes on to state, "You and Ultilimap Corporation shall each bear their own respective costs for legal representation at any arbitration, *costs associated with witnesses and obtaining copies of hearing transcripts*. (emphasis added). Leaving aside the fact that this Arbitration clause is a "living document" that could be amended without any input form the Plaintiff, the costs to the Plaintiff could be tens of thousands of dollars in arbitration. Further, requiring the Plaintiff to pay fees associated with witnesses who currently work for Defendant Utilimap places an unreasonable burden on the Plaintiff over fees which Plaintiff will have no control. This "large arbitration cost" is exactly the kind of cost that the Supreme Court was referring to in *Green Tree* that would preclude Plaintiff from effectively vindicating his right. See *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. at 90.

    **D.    The 2008 arbitration agreement is invalidated by the Dodd-Frank Act of 2010.**

        1.  <u>The Dodd-Frank Act Invalidates Arbitration Agreements which by their terms could encompass Sarbanes Oxley claims.</u>

On July 15, 2010, Congress enacted P.L. 111-203, the Dodd-Frank Wall Street Reform and Consumer Protection Act. It was signed into law on July 21, 2010. (P.L. 111-203, 124 Stat. 1376, July 21, 2010)(Sec. 922; part 4 of 9 as displayed in Westlaw). The Act renders Defendant's alleged arbitration agreements unenforceable. Section 922(c)(2) of the Dodd-Frank Act enhances whistleblower protections under federal securities law. Among other things, the Act supplements the Sarbanes-Oxley Act's whistleblower protections by adding a new sub-section (e) to the end of 18 U.S.C. § 1514A:

(e) NONENFORCEABILITY OF CERTAIN PROVISIONS WAIVING RIGHTS AND REMEDIES OR REQUIRING ARBITRATION OF DISPUTES. –
\* \* \* \*
    (2)    PREDISPUTE ARBITRATION AGREEMENTS. – No predispute arbitration agreement shall be valid or enforceable, **if the agreement requires** arbitration of a dispute arising under this section

(P.L. 111-203, 124 Stat. 1376, July 21, 2010)(Sec. 922; part 4 of 9 as displayed in Westlaw)(emphasis added). These provisions became effective upon the law's passage.[3] In its Motion to Compel Individual Arbitration, Defendant argued that in determining whether a claim falls within the scope of an arbitration agreement, the court should resolve all doubts in favor of coverage. (*Def. Motion to Dismiss and Compel Arbitration*, Dkt. No. 3, p.1). The Defendant's 2008 arbitration policies apply to any employment-related dispute between an employee and Utilimap. (*Defendant's Exhibits*, Dkt. No. 3-1, p.3).

By design, disputes arising under 18 U.S.C. § 1514A arise out of (and pertain to) the employment relationship. *See* 18 U.S.C. 1514A(a) (barring regulated companies from discharging, demoting, suspending, threatening, harassing or in any other manner

---

[3] See http://uscode.house.gov/classification/tbl111cd_2nd.htm (classification table noting amendments to U.S.Code during the 111th Congress, 2nd Session; noting that 18 U.S.C. § 1514A has been amended by P.L. 111-203,§§ 922(b) and (c). Section 922(c) contained the above-referenced amendments to the Sarbanes-Oxley Act.

discriminating against employees in the terms and conditions of employment because of certain lawful whistleblowing acts done by the employee). Thus, Defendant's own argument establishes that the putative agreements – assuming they ever were enforceable – would require arbitration of employment claims arising under § 922 of the Dodd-Frank Act.

As a matter of national policy, Congress has now established that if an arbitration agreement requires arbitration of Sarbanes-Oxley retaliation claims then the agreement is not valid or enforceable. The statutory language is entirely unambiguous in this respect. As a matter of law, this Court must deny Defendant's Motion to Compel Arbitration.

2. <u>The Language of the Dodd-Frank Act Invalidates Arbitration for Any Purpose when the Terms of the Agreement are Broad Enough to Cover Sarbanes Oxley Claims.</u>

Defendant may argue against the statute's plain language, asserting that what Congress really meant to do was invalidate arbitration agreements only to the limited extent a particular case involves claims arising under Sarbanes-Oxley. But if that is what Congress intended then Congress would have used the same language contained in § 1057(d). There, in a third provision invalidating pre-dispute arbitration agreements, Congress said:

(2)  NO PREDISPUTE ARBITRATION AGREEMENTS. – Except as provided under paragraph (3), and notwithstanding any other provision of law, no predispute arbitration agreement shall be valid or enforceable **to the extent** that it requires arbitration of a dispute arising under this section.

P.L. 111-203, 124 Stat. 1376, July 21, 2010)(Sec. 1057(d), p. 7 of 9 as displayed in Westlaw). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464

U.S. 16, 23 (1983), quoting *U.S. v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). Thus, the rules of statutory construction establish that Congress deliberately declined to limit in § 922 its invalidation of certain predispute arbitration agreements. The statute therefore invalidates any pre-dispute arbitration agreement that would require arbitration of a Sarbanes-Oxley retaliation claim, whether or not the suit arises under that statute. In other words, the current test for determining the validity of a pre-dispute arbitration agreement focuses strictly on the breadth of the agreement, not on the specific claims asserted in any particular case.

    3.    <u>The Dodd-Frank Act Operates Retroactively to Apply to Arbitration Agreements Reached before the Adoption of the Act.</u>

Finally, Plaintiff notes that this is not the first time a congressional or regulatory enactment has had the effect of invalidating pre-dispute arbitration agreements, even as to disputes that accrued before the new law or regulation became effective. In *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174 (2nd Cir. 1977), the court considered amendments to the Commodities Exchange Act and certain regulations issued thereunder. Ames had opened an account in November 1975 that required any disputes to be submitted to arbitration under the New York Stock Exchange's rules. Ames filed suit on July 13, 1976, alleging that in January of that year Merrill Lynch had begun deviating from an agreed commodities trading program in order to run up commissions. Merrill Lynch moved to compel arbitration and Ames responded, pointing to a new CFTC regulation that became effective on November 29, 1976. The new regulation established that predispute arbitration agreements were not valid unless they were part of a separate document, unless opening an account was not conditioned upon their execution, and unless they contained certain warnings in large print.

The trial court compelled arbitration and the Second Circuit reversed, holding that the courts "must apply the law as it exists at the time of its decision, even where the law has changed during the pendency of the action, unless the statute or legislative history reveals an intention of prospective application only, or retroactive application would lead to 'manifest injustice.'" *Ames*, 567 F.2d at 1177, quoting *Bradley v. Richmond School Board*, 416 U.S. 696, 711 (1974). Finding neither evidence of an intent that it apply only prospectively or proof of manifest injustice, the court declared Ames' arbitration agreement unenforceable due to the change in the law. *Ames*, 567 F.2d at 1181.

The Sixth Circuit followed suit in *Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 622 F.2d 216 (6th Cir. 1980), *aff'd on other grounds*, 456 U.S. 353 (1982). *Curran* also involved accounts a Merrill Lynch. The plaintiffs there had opened their accounts in 1973 agreeing, as had Ames, to arbitrate any disputes. The agreement also provided that such arbitrations must be commenced within one year after the accrual of such a claim. Litigation commenced on April 5, 1976, and Merrill Lynch argued that it was untimely, not having been brought within one year of the alleged fraud that caused plaintiffs to open their accounts. The plaintiffs argued, in turn, that the one year limitation provision was tied to the arbitration clause and, if the arbitration provision itself was impermissible, then the statute of limitations provision failed as well. Relying upon *Ames*, the *Curran* court declared the arbitration agreement unenforceable and, thus, invalidated the shortened statute of limitations.

*Curran* noted that the retroactive effect of an alteration in a regulatory scheme generally depends upon whether it affects litigation at a point which causes a result so unfair and inequitable that it is unconstitutional. *Curran*, 622 F.2d at 228. But because the

plaintiffs there had been seeking relief from the arbitration clause from an early stage of the litigation, and since no surprise or other unfairness was apparent in the record, the court did not find that retroactive application of the new CFTC regulation would result in manifest injustice.

This case is no different. Herrera filed suit. Defendant sought arbitration. Herrera has been opposing the arbitration ever since. And, unlike *Curran*, Herrera is able to present Congress' new regulatory scheme to the district court prior to a ruling. The plain language of the Dodd-Frank Act renders Utilimap's pre-dispute arbitration agreement unenforceable. There are no indications that it was intended to apply only prospectively. In fact, prospective application would perversely create two classes of workers, both of whom are signatories to identical arbitration agreements. One class would be free to pursue claims in court while the other would still be obligated to arbitrate. If there is any manifest injustice here, it would be in a requirement that Herrera must arbitrate pursuant to an agreement that is now unquestionably unenforceable under federal law.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to compel individual arbitration. Plaintiff requests leave to proceed with the case in the Southern District of Texas, and to use the collective action procedures of the Fair Labor Standards Act.

Respectfully submitted,

**THE LAW OFFICES OF JOE M. WILLIAMS & ASSOCIATES**
9950 Westpark Drive, Suite 330
Houston, Texas  77063
(713) 532-0336 – Telephone
(713) 532-0337 – Facsimile

By: /s/ *Joe Williams*
Joe M. Williams
Federal ID. No. 997092
State Bar No. 24063066

**ATTORNEY FOR PLAINTIFF
EDUARDO HERRERA**

## CERTIFICATE OF SERVICE

This is to certify that on this the 18th day of January, 2012, a true and correct copy of the foregoing instrument has been forwarded to all counsel of record via the Court's ECF electronic filing system.

Flyn Flesher
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, Texas 77002
flyn.flesher@ogletreedeakins.com

/s/ *Joe Williams*
Joe M. Williams